OFFICE OF DISCIPLINARY COUNSEL *v.* FERRERI.

[Cite as *Disciplinary Counsel v. Ferreri* (1999), 85 Ohio St.3d 649.]

(No. 98–2636—Submitted February 24, 1999—Decided June 9, 1999.)

650

*Jonathan E. Coughlan,* Disciplinary Counsel, and *Lori J. Brown,* First Assistant Disciplinary Counsel, for relator.

*H. Ritchey Hollenbaugh,* for respondent.

***Per Curiam.*** We adopt the findings and conclusions of the board. Canon 2 of the Code of Judicial Conduct requires that a judge respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Shortly after one of his decisions was reversed, respondent invited a television reporter into his home and gave an interview in which he maligned the court of appeals, saying that its ruling was "political," that it was made and written by a law clerk, that the appellate court was influenced by the wife of one of the appellant's attorneys, and that the appellate court failed to read the volumes of data which were sent to it. Respondent had no information or authority to support any of these remarks.

Canon 2 does not distinguish, as respondent would have us distinguish, between comments on and "off the record." Nor does the canon distinguish between unedited comments to a television reporter and the edited portions of those comments that are ultimately broadcast to the general public. The canon requires that a judge "at all times" conduct himself or herself in a manner that

promotes public confidence in the judiciary. We recognize that on occasion a judge may unwittingly make an inappropriate casual remark. However, respondent's remarks about the appellate court were not unwitting, inadvertent "slips." His statements were part of lengthy intemperate comments about the appellate court's reversal of his decision.

By this series of statements respondent also violated Canon 3(B)(9) of the Code of Judicial Conduct, which requires that a judge not make any comment about a pending case that might reasonably be expected to affect its outcome. Canon 3(B)(9) does not preclude judges from making "public statements in the course of their official duties or from explaining for public information the procedures of the court." However, at the time of his statements to the television reporter, respondent was not acting in the course of his official duties, nor were his comments limited to an explanation of court procedures.

For the same reasons, we find, as did the board, that respondent's conduct in the television interview violated Canon 4, which requires that a judge avoid impropriety and the appearance of impropriety in all of his activities and, because the judge is a lawyer, his same actions violated Gov.Bar R. IV(2) and Gov.Jud. R. I(2), both of which provide that it is the duty of a lawyer to maintain a respectful attitude toward the courts. Respondent's statements to the television reporter, whether or not ultimately broadcast, and whether or not "on the record," were false, intemperate, disrespectful, and improper for a judicial official.

We agree with the board that respondent's comments to The Call and Post about the operation of the juvenile detention center also violated Canon 2. Respondent should not have given The Call and Post reporter his opinion that it was routine for juvenile detention center staff members to beat inmates and also routine for them to "cover up" the beatings. Nor should respondent in speaking with the media have charged that such coverups were a result of a conspiracy of the court's public relations officer and the administration. By suggesting to the media that the administrative judge was engaged in a conspiracy with officials of the juvenile detention center to "cover up" violations, that the administrative judge failed to provide leadership in solving the problems of the detention center, and that the juvenile court was "out of control," respondent failed to cooperate with other judges and court officials in the administration of the court's business and, thus, was in violation of Canon 3(C)(1), Gov.Bar R. IV(2), Gov.Jud. R. I(2), and DR 8–102(B).

As found by the board, respondent's comments to the Cleveland Free Times in August 1995 about Camp Roulston also violated Canon 2, Gov.Bar R. IV(2) and Gov.Jud. R. I(2). Respondent's expressed opinion that the Administrative Judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, and the court's Director of Community Services and Probation were the two most

entrenched and incompetent bureaucrats at the courthouse and his unsupported statements that they lied to federal government officials about the success rate of the facility should not have been made to the media or anyone else. Even though the board did not find that respondent had criticized the administrative judge, it found that he clearly maligned court officers working under that judge's direction and control, and thereby maligned the court itself.

Respondent, like many judges, cares deeply about the area of the law under his jurisdiction. The mitigation evidence introduced in this case is directed to his concern for children, and particularly the welfare of underprivileged children. But strong feelings do not excuse a judge from complying with the judicial canons and the Disciplinary Rules. Nor is deep concern a license to criticize fellow members of the judiciary who may hold different views.

Like the board, this court has no doubt that respondent's remarks about the appellate court and his statements about the juvenile detention center undermine the public's confidence in a fair and impartial judicial system and violate the Code of Judicial Conduct. Those comments which were specifically directed at a judge violated the Disciplinary Rules.

We therefore believe that an appropriate sanction in this case is suspension from the practice of law for eighteen months with the final twelve months stayed. Gov.Jud.R. III(7)(A) mandates that a disciplinary order suspending a judge from the practice of law shall include a provision immediately suspending the judge from judicial office without pay for the term of suspension. Accordingly, respondent is hereby suspended from the practice of law for eighteen months with the final twelve of those months stayed, and he is hereby suspended without pay from his position as Judge of the Cuyahoga County Court of Common Pleas, Juvenile Division, for six months. Costs are taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.** Language is a wonderful and powerful part of our lives. It can make us cry; it can bring us great joy. Language and context are inextricably intertwined. When they are at odds, the result can be destructive. The choice of words, the audience, and the time and place we say something all affect the impact of language.

The context of the language used in this case is especially complex. This case has to be judged before the backdrop of the natural tension between our rich

history of free speech under the First Amendment and the limitations to judicial speech contained in Canon 2 of the Code of Judicial Conduct. Canon 2 requires judges to act in a manner that "promotes public confidence in the integrity and impartiality of the judiciary." Canon 2, in its general terms, addresses the issue of context in judicial speech by requiring appropriateness.

Canon 2 was never meant to stifle judges—it recognizes that a judge need not sit silent in order to show his or her respect for the law and promote public confidence in the judiciary. Canon 2(A) encourages judges to speak about the law and the legal system and consult with other governmental bodies about the administration of justice. Sometimes a judge's commentary must necessarily be tough.

On the other hand, Canon 2 recognizes that judges are not ordinary citizens, and that the words they say reflect on the entire institution, an institution that owes its life to public confidence. An erosion of that confidence affects everyone. Thus, while every citizen has the right to stand up and speak out, even irresponsibly, a judge is limited to speaking out responsibly. That limitation should hardly be thought of as a muzzle.

Judge Ferreri's choice of words and the context in which he spoke them went beyond tough commentary. Judge Ferreri is not being sanctioned for the fact that he spoke out, but instead because of the manner in which he did it. He employed false and purposely incendiary comments. Off the record or not, some of his comments were made on camera.

There is a difference in degree to what this judge said, a difference that makes a sanction appropriate in this case. The majority opinion recognizes the necessary vibrancy of the judiciary, but also recognizes that judges must act responsibly. Respondent in this case did not, and I agree with the majority in that. Respondent's genuine concern and passion for the juvenile court system is laudable; his judicial temperament in this case was unacceptable.

I dissent only from the sanction the majority imposes. I would have followed the recommendation of the panel: an eighteen-month suspension with the entire suspension stayed in favor of probation under the monitoring of a judge, with conditions.