DISCIPLINARY COUNSEL *v.* RUNYAN.

[Cite as *Disciplinary Counsel v. Runyan,*
108 Ohio St.3d 43, 2006-Ohio-80.]

(No. 2005–1183—Submitted August 23, 2005—Decided January 25, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Jeffrey Lynn Runyan of Newark, Ohio, Attorney Registration No. 0004873, was admitted to the practice of law in Ohio in 1979. In November 1998, respondent was elected to the Ashland County Court of Common Pleas. In February 1999, he began serving as the sole general-division judge in that court.

{¶ 2} On February 4, 2005, relator, Disciplinary Counsel, charged respondent in an amended, two-count complaint with violations of the Code of Judicial Conduct and the Code of Professional Responsibility. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of misconduct and a recommendation, which the board adopted.

Misconduct

*Count I*

{¶ 3} The charges of misconduct in Count I arose from respondent's attempts to take "corrective action" toward a police detective whose conversation with a potential witness led respondent to declare a mistrial in the prosecution of a multiple-felony-count indictment.

{¶ 4} Keith Songer was indicted on theft, grand theft, and forgery charges in December 2002. Beginning on August 5, 2003, respondent presided over Son-

ger's jury trial. Songer's defense counsel anticipated calling as witnesses Songer and his brother, who allegedly had some knowledge of the events underlying the indictment. Defense counsel expected the brother to testify that Songer had lacked the requisite intent to have committed the charged offenses.

{¶ 5} Before he was called to testify, however, a detective spoke with the brother outside the courtroom and mentioned that similar charges might be brought against the brother. Songer's brother thereafter exercised his Fifth Amendment right against self-incrimination and declined to testify. Respondent later granted the defense's motion for mistrial, explaining that due process considerations "compel a finding that an agent of the State should not be permitted to silence the defendant's witness in the hallway of this courthouse just prior to [the witness's] testimony."

{¶ 6} On August 8, 2003, an article appeared in the Ashland Times–Gazette that quoted the Ashland County Prosecutor and the city of Ashland Chief of Police to the effect that the detective had not acted improperly by advising Songer's brother of his possible prosecution. On the same day, respondent wrote to the county prosecutor and police chief in an effort to initiate a formal investigation of the incident that led to the mistrial.

{¶ 7} On August 29, 2003, respondent overruled Songer's motion to dismiss and bar retrial, finding that retrial was not barred by the Double Jeopardy Clause because although the detective did intimidate the brother, he had done so unintentionally, and therefore the state did not "goad" the defendant into seeking a mistrial. In overruling the motion, however, respondent ordered the county prosecutor's office, as the representative of the state, to post a $2,500 bond to pay some of the costs of retrying the case and warned that the indictment against Songer would be dismissed if the state did not pay. The county prosecutor refused to post the bond. Respondent then granted Songer's motion to dismiss the indictment, defending his placing of financial burdens on the state as part of the court's "inherent power to regulate and control its proceedings" and citing the "well-accepted doctrine that the State is responsible in such matters, for the conduct of its representatives."

{¶ 8} In dismissing the Songer indictment, respondent's order also vacated the order setting the September 4, 2003 jury trial to retry Songer. The county prosecutor nevertheless appeared at the courthouse on that day and announced to the media present that he was prepared to go to trial but was unable to do so because of respondent's dismissal order.

{¶ 9} During August, September, and October 2003, respondent, the county prosecutor, and the city police chief exchanged letters concerning law-enforcement investigations into the detective's conduct prior to the Songer mistrial. In his letters, respondent declared his "obligation to take corrective action," refer-

ring to appointing a special prosecutor or initiating contempt proceedings, unless sufficient disciplinary measures were taken against the detective whose conversation prompted the mistrial. On October 15, 2003, one month after the state appealed the dismissed indictment, respondent tried to broker a deal between the police, the county prosecutor, the detective, and the common pleas court that he claimed would provide a satisfactory resolution to the ordeal.

{¶ 10} Respondent's deal proposed terms well beyond his judicial authority and ethical constraints. He promised to "accept" the discipline that the police chief intended to impose for the detective's mistake and to forgo contempt or special-prosecutor proceedings if, in exchange, the prosecutor dismissed the appeal in the Songer case and the police chief made a public statement characterizing the detective's conversation as wrong and declaring that the court ordered the mistrial "properly." Respondent also proposed as part of the deal that (1) he would not permit cross-examination of the detective concerning the mistrial during retrial in the Songer case because the detective's mistake was unintentional and therefore irrelevant, (2) in the event that officer misconduct ever leads to another mistrial, the county prosecutor, police, and individual officer would accept joint and several liability for the costs of retrial, and (3) neither the county prosecutor nor his assistants would stage a "symbolic" protest of the court's decisions in the future.

{¶ 11} Respondent sent a signature page with his letter and gave the parties ten days to agree to his terms. The county prosecutor and police chief declined his proposal, and the prosecutor reported respondent's conduct to relator. On October 24, 2003, the same day that respondent received relator's letter of inquiry about the grievance, respondent wrote to the prosecutor, with copies to the police chief and others to whom respondent had sent his previous letter, thanking all concerned for their "settlement efforts." His letter further advised that because the matter remained unresolved, the terms expressed in his October 15 letter were "merely suggestions" and were "not binding upon the Court in any way, if and when those same issues come before the Court in this or other future cases."

{¶ 12} On March 18, 2004, the Court of Appeals for Ashland County reversed and remanded respondent's order dismissing the Songer indictment for the prosecution's failure to pay costs of retrial. *State v. Songer*, Ashland App. No. 03COA051, 2004-Ohio-1281, 2004 WL 540305. On October 13, 2004, we denied leave to appeal. *State v. Songer*, 103 Ohio St.3d 1477, 2004-Ohio-5405, 816 N.E.2d 254.

{¶ 13} Based on these facts, the parties stipulated and the board found that respondent had violated Canons 2 (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the

integrity and impartiality of the judiciary), 3 (a judge shall perform the duties of judicial office impartially and diligently), 3(B)(9) ("While a proceeding is pending or impending in any court, a judge shall not make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing"), and 4 (a judge shall avoid impropriety and the appearance of impropriety in all the judge's activities), and DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice).

## Count II

{¶ 14} The parties also stipulated and the board found that respondent had violated Canon 3(E)(1)(b) (a judge shall disqualify himself in a proceeding in which the judge's impartiality might reasonably be questioned, including, but not limited to, instances where the judge served as a lawyer in the matter in controversy). Respondent committed this misconduct by ruling on a former client's motion to terminate his prison sentence.

{¶ 15} Respondent represented Charles A. Miller, an indicted defendant, in 1991. Respondent negotiated a plea agreement for Miller; the attorney-client relationship, however, was not completely satisfactory. In January 1992, respondent was granted leave to withdraw from the case. At the same time, Miller was appointed new counsel and pleaded guilty to two counts of the indictment, including specifications, which respondent claims was essentially the plea agreement that he had negotiated. Miller was sentenced to prison.

{¶ 16} When respondent was elected to the common pleas bench, a visiting judge was assigned to hear motions filed in the Miller case. The visiting judge remained on the case for several years, but he was physically unable to rule when Miller filed a motion to terminate his sentence in February 2004. Respondent overruled the motion the day after receiving the state's response. Miller later wrote to respondent, objecting to his ruling on the ground that respondent had once represented him and that respondent had "quit[ ] on" him. In November 2004, respondent also overruled Miller's second motion to terminate his sentence.

## Sanction

{¶ 17} In recommending a sanction for this misconduct, the board weighed the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 18} The board found, consistent with the parties' stipulations, that respondent had no prior disciplinary record and had cooperated completely in the disciplinary proceedings, both of which are mitigating factors under BCGD

Proc.Reg. 10(B)(2)(a) and (d). Respondent also recognized with remorse the gravity of his mistakes, conceding that he should never have proposed his terms to resolve his differences with the county prosecutor and the police chief. Acknowledging this apology, the board found that respondent genuinely believed that the public would be served by his solution to the Songer situation and therefore that he did not act out of self-interest. See BCGD Proc.Reg. 10(B)(2)(b). Respondent further conceded that he should have recused himself from Miller's motions, which relator agrees had no merit; he misguidedly thought, however, that as the only judge in a small county, his rulings were appropriately expedient. Finally, the board accepted testimonials as to respondent's good reputation and character, mitigating factors under BCGD Proc.Reg. 10(B)(2)(e), observing that respondent is held in high esteem by many for his work ethic as a lawyer and a judge, his professional competence, and his integrity apart from the mistakes that he made in this case. The board found no aggravating factors.

{¶ 19} The board recommended that respondent be publicly reprimanded for his misconduct based on *Ohio State Bar Assn. v. Vukelic*, 102 Ohio St.3d 421, 2004-Ohio-3651, 811 N.E.2d 1127, and *Disciplinary v. Christ* (1996), 74 Ohio St.3d 308, 658 N.E.2d 746. In *Vukelic*, a part-time magistrate in mayor's court was publicly reprimanded for failing to immediately transfer a misdemeanor case against one of his clients in a domestic relations case and allowing the case to be discussed in his presence. In *Christ*, a lawyer was publicly reprimanded for having represented a woman in a parental rights case after he signed the decree in her divorce from the child's father. The board also cited *Disciplinary Counsel v. Medley* (2001), 93 Ohio St.3d 474, 756 N.E.2d 104, in which a judge was publicly reprimanded because he gave a defendant a ride home from the police station, suggesting to onlookers that she might receive special treatment, and did not promptly recuse himself from her case.

{¶ 20} Neither relator nor respondent, who is no longer a judge, has objected to the recommendation that respondent receive a public reprimand.

## Review

{¶ 21} "When deciding what sanction to impose, we consider the duties violated, respondent's mental state, the injury caused, the existence of aggravating or mitigating circumstances, and applicable precedent." *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609. The board made determinations concerning all these factors. We therefore agree that respondent committed the violations as found by the board and that a public reprimand is appropriate.

{¶ 22} Respondent is therefore publicly reprimanded for his violations of Canons 2, 3, 3(B)(9), 3(E)(1)(b), and 4, and DR 1–102(A)(5). Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

———

Jonathan E. Coughlan, Disciplinary Counsel, and Brian E. Shinn, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson and George D. Jonson, for respondent.