DISCIPLINARY COUNSEL *v.* CAMPBELL.

[Cite as *Disciplinary Counsel v. Campbell*,

126 Ohio St.3d 150, 2010-Ohio-3265.]

*Judicial misconduct — Discipline — Improper investigation of criminal matter —*
*Failure to act in courteous, dignified manner — Improper use of judicial*
*office to pressure persons into action — Improper handling of indigency*
*determinations — One-year suspension with six months stayed on*
*condition of no further violations.*

(No. 2009-2034 — Submitted January 13, 2010 — Decided July 15, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 08-030.

————————————

**Per Curiam**.

{¶ 1}  Respondent, Phil William Campbell of Convoy, Ohio, Attorney
Registration No. 0009352, was admitted to the practice of law in Ohio in
November 1976.  First appointed to the Van Wert Municipal Court in March
1987, respondent was subsequently elected in November 1987 and reelected in
1993, 1999, and 2005.  His current term ends on December 31, 2011.  In a
complaint filed May 13, 2008, relator, Disciplinary Counsel, charged respondent
with multiple violations of the former Code of Judicial Conduct and the Code of
Professional Responsibility.[1]

{¶ 2}  The complaint encompasses incidents from 2003 through 2007,
including respondent's allegedly improper investigation of a criminal matter then

---

1. Because all the conduct in this case occurred before the effective dates of the current Rules of
Professional Conduct (effective February 1, 2007) and the current Code of Judicial Conduct
(effective March 1, 2009), respondent was charged under the former versions of each.

pending in his court; failure to act in a patient, dignified, and courteous manner; use of his position as a judge to pressure persons into action; improper handling of proceedings to appoint counsel to indigent defendants; failure to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary; and failure to faithfully follow the law.

{¶ 3} In June 2009, a three-member panel of the Board of Commissioners on Grievances and Discipline conducted a hearing. Based upon respondent's testimony, the parties' factual stipulations, 150 stipulated exhibits, and respondent's deposition testimony, the panel unanimously agreed to dismiss Count Ten of the original complaint, and all violations charged in the original complaint but not stipulated to by the parties. The panel unanimously adopted the parties' 125 stipulations of fact, including the stipulated violations of the former Code of Judicial Conduct and Code of Professional Responsibility, and the parties' stipulated recommendation of a 12-month suspension with six months stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction, and we do also. However, we grant the six-month stay upon the condition that respondent commit no further disciplinary violations during the 12-month period of sanction.

## Misconduct

### *Count One*

{¶ 4} In April 2005, a defendant was twice convicted of underage consumption of alcohol in the Van Wert Municipal Court. He pleaded guilty and received a suspended ten-day jail sentence, conditioned upon his compliance with probation. In September 2005, defendant was charged with underage consumption and furnishing alcohol to a minor. He pleaded guilty and was sentenced to 90 days in jail, with 70 days suspended on the condition that he comply with the terms of his probation.

2

**{¶ 5}** Seven months later, defendant was arrested while sitting in his vehicle and charged with physical control of a vehicle while intoxicated, underage consumption of alcohol, and possession of marijuana. At his arraignment, the state changed the physical-control charge to a charge of operating a vehicle while intoxicated ("OMVI"). Because he was still on probation for his prior convictions, respondent ordered defendant incarcerated, with work and school release, pending his probation-violation hearing. Because the jail did not have space in the work-release dorm, respondent transferred him from jail to electronically monitored home arrest ("EMHA").

**{¶ 6}** On April 9, 2006, several other individuals were arrested for underage consumption at a party held at the apartment where defendant had been arrested. Two of the others arrested appeared before respondent on April 13 and pleaded guilty. Without placing them under oath, respondent questioned them about who had brought alcohol to the party, and each stated that defendant had supplied alcohol. Although two attorneys had already entered an appearance of counsel on defendant's behalf, they were not present at this hearing. Afterwards, respondent spoke to a police officer off the record and indicated that he should follow up on the information that defendant had brought alcohol to the party. The Van Wert Police investigated the matter and did file a charge against defendant for furnishing alcohol to minors.

**{¶ 7}** At his May 3, 2006 pretrial and probation-violation hearing, defendant entered a not-guilty plea. The city law director moved to dismiss the furnishing charge because it appeared that the police had questioned defendant outside of the presence of his counsel and without giving him his *Miranda* warnings. Respondent denied the motion, stating, "Well it doesn't matter if he was given Miranda or not it is the testimony of the other people [sic]. On the new charge." When the law director noted that defendant had made an admission to

the officer, respondent replied, "So, he can suppress it. It doesn't change the charge."

{¶ 8} Two days later, the same two individuals previously questioned appeared before respondent to enter pleas to related underage-consumption charges. Respondent asked who had brought the alcohol to the party, and one mentioned defendant's name. When the other also mentioned defendant in response to questions, respondent placed him under oath. Before he continued the questioning, respondent asked the law director who was representing defendant. She replied by identifying the attorney and, after acknowledging her response, respondent continued to question the other defendant.

{¶ 9} At defendant's June 12 pretrial, the parties proposed a plea that would have dismissed the furnishing charge in exchange for a plea on other charges. However, after a discussion with the parties, respondent declined the plea, stating, "Alright, then I guess we will set that one [the furnishing charge] for trial. Furnishing is a very serious crime and this court takes a very serious approach to that."

{¶ 10} During a later off-the-record discussion of the plea agreement, respondent opened a volume of the Ohio Revised Code to R.C. 2945.50, covering depositions in criminal cases, and left the bench. When respondent returned, defendant's attorney stated that he did not want to depose witnesses on the furnishing charge due to the added expense. Respondent then asked the clerk to get the audio recordings of the earlier hearings. Using headphones because the recordings could not be played on the courtroom speakers, respondent listened to the portions where defendant was implicated for bringing alcohol to the party. He then relayed what he had heard to the attorneys.

{¶ 11} Respondent stated that he wished to proceed with the probation-violation hearing. Defendant's attorney objected, stating that because the probation violation was based upon the same facts as the furnishing and underage-

consumption charges, the hearing should be continued until those charges were resolved. The parties stipulated and the board found that respondent set the case for a pretrial and probation-violation hearing and permitted defendant to remain on EMHA. But the record demonstrates that respondent proceeded to hear the testimony of an officer of the Van Wert City Police Department. Only when defendant's attorney renewed his objection at the conclusion of the state's direct examination of the witness did respondent agree to continue the hearing. And at that time, respondent also terminated defendant's bail for EMHA and remanded him into custody.

{¶ 12} Based upon these facts, the parties stipulated and the board found that respondent engaged in misconduct by (1) encouraging the officer to follow up on the statements of two other individuals who had implicated defendant for furnishing alcohol and (2) questioning the other minors about who had supplied their alcohol after defendant had been charged with furnishing alcohol to a minor.

{¶ 13} We do not suggest that a judge who obtains information about illegal conduct may not relay that information to law-enforcement officials who may, at their discretion, elect to investigate. Here, however, the judge did more than merely forward information that came to his attention; he became a participant in the investigation. The totality of the evidence in this case clearly and convincingly demonstrates that respondent (1) actively sought information about the defendant who allegedly supplied the minors with alcohol, knowing that he already had a case pending before the court, (2) placed one of the minors under oath for the specific purpose of obtaining evidence against the defendant, (3) initiated the law-enforcement investigation of the defendant for furnishing alcohol to minors, (4) repeatedly and unreasonably refused to either dismiss the furnishing charge or to consider a plea that would result in the dismissal of that charge, (5) revoked the defendant's EMHA after counsel requested a continuance of his probation-violation hearing until after the furnishing and underage-consumption

charges were resolved. Moreover, the record demonstrates that on August 25, 2006, while denying that any basis existed for his disqualification, respondent assigned the case to a visiting judge. And on August 28, 2006, pursuant to R.C. 2701.031, respondent was removed from this case in response to an affidavit of disqualification filed by defendant's counsel, based upon a "lingering distrust" that respondent could fairly and impartially decide the case. Therefore, we conclude that respondent's conduct crossed the line from the permissible relay of information to law enforcement to the impermissible active participation in the investigation and collection of evidence against the defendant.

{¶ 14} As respondent conceded at his hearing, it is the role of law enforcement, not the judiciary, to conduct investigations. In *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, we stated, " 'The responsibility of a judge is to decide matters that have been submitted to the court by the parties. The judge may not, having decided a case, advocate for or, as in this case, materially assist one party at the expense of the other. Such advocacy creates the appearance, and perhaps the reality, of partiality on the part of the judge. This, in turn, erodes public confidence in the fairness of the judiciary and undermines the faith in the judicial process that is a necessary component of republican democracy.' " Id. at ¶ 13, quoting *In re Complaint Against White* (2002), 264 Neb. 740, 752, 651 N.W.2d 551.

{¶ 15} Accordingly, we agree with the board's conclusion that respondent's conduct violated former Canon 1 (a judge shall uphold the integrity and independence of the judiciary), former Canon 2 (a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), and DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

*Count Two*

{¶ 16} During an off-the-record pretrial hearing in chambers in May 2006, one of the attorneys representing a defendant in a domestic-violence matter informed respondent that his client would not accept a plea agreement and wanted a jury trial. Respondent became upset with the attorney and told him that he was "behaving like a horse's ass." After the attorneys left the pretrial for the lunch recess, respondent encountered a police officer in a back hallway and asked him to open defendant's holding cell. In a raised voice and outside the presence of defendant's counsel, respondent told him that he would be taken back to the jail because there was not going to be a plea. When counsel returned after lunch, respondent continued the pretrial for two months. At the panel hearing, respondent testified that his statement to defense counsel was "out of line" and that he should not have spoken to a defendant who had an attorney.

{¶ 17} The parties stipulated, the board found, and we agree that respondent's conduct violated the former Code of Judicial Conduct, Canons 2 and 3(B)(4) (a judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control).

### Count Three

{¶ 18} On January 13, 2005, a defendant appeared before respondent to be arraigned for OMVI and possession of marijuana. On February 7, 2005, he pleaded guilty to an amended charge of reckless operation and was fined $150. At the time of his plea and sentencing, the results of a second test of his urine sample were not available.

{¶ 19} Even though he knew that defendant's case had been closed, in mid-February 2005, respondent asked the city law director's secretary to bring the law director's file on defendant to the municipal court. Upon examining the file, respondent found that it did not contain the results of the second drug test. The

law director was unaware of respondent's request for her case file until she discovered it sitting on the counter in the clerk's office.

{¶ 20} At the panel hearing, respondent testified that it was wrong for him to use his position as a judge to pressure someone, in this instance the law director's secretary, to do something. He also conceded that it was not part of his job to look in the prosecutor's file. The parties stipulated, the board found, and we agree that respondent's conduct with respect to Count Three violated Canon 2 of the former Code of Judicial Conduct.

### *Count Four*

{¶ 21} On December 15, 2006, a defendant, an ironworker from Nebraska, was arrested for assault, aggravated menacing, and criminal damaging causing serious risk of physical harm – all first-degree misdemeanors. At his arraignment, respondent spoke to defendant regarding his eligibility for appointed counsel:

{¶ 22} "COURT: Have you hired an attorney * * *?

{¶ 23} "DEFENDANT: No.

{¶ 24} "COURT: You're a union ironworker?

{¶ 25} "DEFENDANT: Well, I was until Friday.

{¶ 26} "COURT: You were on the date of – of the event?

{¶ 27} "DEFENDANT: Yes, sir.

{¶ 28} "COURT: The Court finds you're not indigent; you'll have to hire an attorney."

{¶ 29} Because of the defendant's criminal record and the fact that he was a Nebraska resident who had worked in Van Wert only a short time, the city law director requested a high cash bond. Respondent set bail at $20,000 secured bond or ten percent cash bond. Unable to make bail, defendant was held in jail.

{¶ 30} Defendant repeatedly requested appointed counsel. The acting law director relayed one such request to the court before trial. At trial on January 9,

2007, defendant made at least three separate requests for appointed counsel and stated at least six times either that he had no money or that he had no money to hire an attorney. Respondent denied those requests, stating that the court had already determined that he was ineligible for appointed counsel, but granted him a continuance to obtain counsel at his own expense.

{¶ 31} Attorney Steve Diller ultimately entered an appearance on defendant's behalf and represented him on a pro bono basis. A guilty plea was entered, and respondent sentenced defendant to 180 days in jail with credit for time served, suspended the balance upon payment of a $250 fine and costs, and placed him on probation for one year.

{¶ 32} At the panel hearing, respondent testified that he had misunderstood the law that applies to appointment of counsel for indigent defendants, in that he believed that the focus of the determination was defendant's status at the time of the offense. He stated that had he properly understood the law, he would have made a more thorough inquiry regarding defendant's finances at the arraignment. The parties stipulated, the board found, and we agree that respondent's conduct in Count Four violated Canon 2 of the former Code of Judicial Conduct, as well as DR 1-102(A)(5).

### Count Five

{¶ 33} On April 30, 2007, three defendants who were in custody and apparently indigent and in need of appointed counsel appeared before respondent; however there were no public defenders available that day. While arraigning one of the three, respondent tried unsuccessfully to reach the public defender's office to determine whether someone could provide counsel. When he was unable to locate a public defender, respondent stated on the record that a public defender is normally present in court, but that the "county commissioners chose not to properly endorse the contract; so, therefore, no county – no public defender is here."

**{¶ 34}** After commencing the third such arraignment, respondent called a county prosecutor, who was also president of the Van Wert County Bar Association, to see if she could assist him in locating an attorney who would be willing to act as a public defender that day. When this attempt failed, respondent continued these three arraignments and remanded all three defendants to custody until the following morning. Respondent then wrote a letter to the prosecutor and copied it to the public defender, detailing what had occurred during the arraignments.

**{¶ 35}** At the panel hearing, respondent agreed that it was inappropriate for him to make comments regarding the acts of the county commissioners and admitted that those remarks improperly gave the impression that the three defendants were remanded into custody due to a failure on the part of the county commissioners. The parties stipulated, the board found, and we agree that based upon these facts, respondent's conduct violated Canon 2 of the former Code of Judicial Conduct.

### *Count Six*

**{¶ 36}** On August 6, 2007, a defendant appeared before respondent and entered a no-contest plea to misdemeanor charges of possession of marijuana and drug paraphernalia. After entering her plea, defendant volunteered that she was not currently using marijuana, but had been prescribed marijuana in pill form during an earlier hospitalization and had continued to use it in plant form for a time afterwards. Based upon her representation, respondent asked if she would take a urine drug screen, and defendant agreed.

**{¶ 37}** Shortly after defendant left with a female staff member, she returned to the courtroom where respondent was conducting further arraignments. She stated that she would require a blood test because she had end-stage renal disease and was unable to produce urine. Respondent had her placed in a holding cell for approximately 49 minutes while he completed his arraignment docket.

Upon defendant's return to the courtroom, respondent questioned her, under oath and on the record, about her medical conditions.

{¶ 38} At the panel hearing, respondent acknowledged that because defendant had not been disorderly or out of line, it was neither prudent nor necessary to place her in a holding cell until he was ready to discuss her case. The parties stipulated, the board found, and we agree that respondent's conduct in Count Six violated Canons 2 and 3(B)(4) of the former Code of Judicial Conduct.

*Count Seven*

{¶ 39} The Van Wert City Law Director gave notice of her resignation, effective December 31, 2006. In the early morning of January 2, 2007, respondent learned that her successor had not yet received a signed contract from the city and so would not serve as the prosecutor that day. Without a representative for the prosecution, the arraignments scheduled in respondent's courtroom could not proceed.

{¶ 40} Respondent called the mayor's office and spoke with his secretary. Shortly thereafter, the mayor arrived at the courthouse and went to the clerk's office to see respondent. Seeing the mayor, respondent entered the clerk's office wearing his judicial robe and gesturing toward the courtroom. After the two men entered the courtroom and respondent took the bench, the clerk announced that court was in session. Respondent called the mayor to the bench and proceeded to question him, on the record but not under oath, about why the new law director's contract had not been approved. The mayor explained that before the new law director could assume his duties, three people had to sign the contract – the mayor, the new law director, and the city auditor. Respondent then asked the mayor whether the law director would be in court at 11:00, and the mayor said that he would be.

{¶ 41} Respondent conceded that by wearing his robe and bringing the mayor into the courtroom, he gave the appearance that he was trying to force the

mayor to execute the law director's contract and that his conduct was not appropriate. The parties stipulated, the board found, and we agree that this conduct violated Canon 2 of the former Code of Judicial Conduct.

### Count Eight

{¶ 42} On July 15, 2004, a defendant appeared before respondent, pro se, and entered a guilty plea to one charge of violating a civil protection order ("CPO") that had been granted in her favor by allowing the person against whom she had obtained the order to stay in her home. Respondent convicted her and sentenced her to serve one day in jail and to pay a fine of $50.

{¶ 43} Six days later, an attorney entered an appearance on defendant's behalf. Citing this court's decision in *State v. Lucas*, 100 Ohio St.3d 1, 2003-Ohio-4778, 795 N.E.2d 642, for the proposition that the protected subject of a CPO cannot violate her own CPO, the attorney moved the court for withdrawal of the guilty plea. Respondent denied the motion. Defendant appealed to the Third District Court of Appeals.

{¶ 44} Citing *Lucas,* the court of appeals reversed, holding that the language of R.C. 3113.31(E)(7)(a) demonstrates a legislative intent that only the party against whom a CPO is issued can be criminally responsible for violating the order. *State v. Youngpeter*, Van Wert App. Nos. 15-04-09 and 15-04-10, 2005-Ohio-329, ¶ 15. Because defendant was the protected party in the CPO and had entered a guilty plea to the charge of violating that CPO, the court determined that respondent's denial of her motion to withdraw that plea created a manifest injustice. Id. at ¶ 16. Accordingly, the court vacated the conviction and remanded the case for further proceedings.

{¶ 45} On remand, respondent permitted defendant to withdraw her guilty plea and enter a plea of not guilty to the original charge. Respondent made it clear that he would not dismiss the charge until an amended charge was filed. After a discussion off the record with the law director and defense counsel as to

which charge would be appropriate, the prosecution amended the charge to obstruction of justice. Defendant pleaded guilty to that lesser charge. Respondent convicted her and sentenced her to ten days' incarceration, all suspended, one year of probation, plus a $50 fine and costs. Additionally, as a condition of her probation, respondent ordered defendant to have no contact with the party against whom she had obtained the CPO.

{¶ 46} At the panel hearing, respondent stated that he had misunderstood his role upon remand from the appellate court and admitted that he should have dismissed the original charge. He also acknowledged that as a judge, it was his duty to serve as the neutral referee and that it was improper for him to be involved in the formulation or prosecution of charges. The parties stipulated, the board found, and we agree that respondent's conduct with respect to Count Eight violated Canons 2 and 3(B)(2) (a judge shall be faithful to the law and maintain professional competence in it) of the former Code of Judicial Conduct.

*Count Nine*

{¶ 47} Count Nine relates to respondent's treatment of two defendants as he assessed their eligibility for appointed counsel in their criminal cases.

{¶ 48} One defendant completed a personal-data form and bail questionnaire stating that he was homeless, was not employed, and owned no property. Respondent had this information available to him at defendant's arraignment on one count of breaking and entering. However, respondent badgered him by repeatedly inquiring about his employment history, his efforts to seek employment, why he had not sought employment, and why he did not want to work. Although respondent often cut off defendant's attempts to answer, defendant eventually stated that he had not been employed since 2004.

{¶ 49} Based upon the information obtained at hearing, respondent determined that defendant was indigent, appointed a public defender, and ordered a mental-health evaluation. Although defendant was homeless and had no

income, respondent set bail at $2,500 cash, which required defendant to be held in jail.

{¶ 50} Another defendant similarly appeared before respondent for arraignment. In her bail questionnaire and personal-data form, defendant stated that she was not employed, had income of both "0" and "100," was married, and was living at the House of Transition, a local women's shelter. In assessing her eligibility for appointed counsel, respondent asked defendant about her husband's employment and income. Defendant responded that she had separated from her husband and had obtained a CPO against him in Greenwood, Indiana. When respondent asked to see the CPO, defendant stated that she did not have a copy, that the issuing court did not know her whereabouts, and that once she got settled in locally, her attorney in Indiana would send her the paperwork. Respondent indicated that without a copy of the CPO, he would have to consider defendant's husband's income in determining her eligibility for appointed counsel.

{¶ 51} Respondent also inquired about defendant's residence, stating that "as I understand your statement [you're] homeless; correct?" When she replied, "Well, I have the House of Transition," the court insisted, "No, you're homeless. The house – You have no right to be at the House of Transitions. That's a conditional, vol- — that's an – something you're allowed to be at, " and continued to refer to her as "homeless" throughout the hearing. At the conclusion of the hearing, respondent conditionally appointed a public defender to represent defendant, set bail at $5,000 cash bond, and remanded her to jail.

{¶ 52} At the panel hearing, respondent acknowledged that he had not treated either of these defendants with the requisite courtesy and admitted that he "basically lapsed into a trial lawyer cross-examination," asking too many questions and pressing too hard to get answers. The parties stipulated, the board found, and we agree that respondent's conduct in these matters violated Canons 2 and 3(B)(4) of the former Code of Judicial Conduct.

**Sanction**

**{¶ 53}** In determining the appropriate sanction for respondent's violations of the former Code of Judicial Conduct and Code of Professional Responsibility, we consider the duties violated, the injury caused, respondent's mental state, the existence of aggravating or mitigating circumstances listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."), and applicable precedent. *Disciplinary Counsel v. Sargeant*, 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 28, citing *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609.

**{¶ 54}** Respondent has committed 14 violations of the former Code of Judicial Conduct, including one violation of Canon 1, nine violations of Canon 2, one violation of Canon 3(B)(2), and three violations of Canon 3(B)(4). He has also committed two violations of DR 1-102(A)(5) of the Code of Professional Responsibility.

**{¶ 55}** Respondent injected himself into a criminal investigation, impairing the independence of the judiciary. His conduct with respect to that investigation and his efforts to try an indigent defendant without appointing him counsel to aid in his defense were prejudicial to the administration of justice. Respondent also failed to follow applicable precedent from this court and faithfully discharge his duties upon a remand from an appellate court. He behaved in an undignified, unprofessional, and discourteous manner toward attorneys and litigants in his courtroom. These actions, as well as his use of his judicial authority to gain access to a prosecutor's file and question the mayor, demonstrated disrespect for the law and served to erode public confidence in the integrity and impartiality of the judiciary. Furthermore, respondent's conduct caused harm, most notably to the indigent criminal defendants appearing in his

courtroom who were temporarily deprived of appointed counsel and subject to unnecessary and embarrassing questions about their personal affairs.

{¶ 56} The parties presented no evidence regarding respondent's mental state at the time of these violations. Therefore, "we presume that he was healthy and unhindered in that regard." *Sargeant*, 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 31.

{¶ 57} The parties stipulated, the board found, and we agree that the following mitigating factors are present: (1) respondent has not been the subject of previous discipline, (2) respondent has not acted with a dishonest or selfish motive, and (3) respondent has made a full and free disclosure to the board and has exhibited a cooperative attitude toward the proceedings. BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). Although the parties did not stipulate to aggravating factors and the board made no findings in that regard, we find that respondent has engaged in a pattern of misconduct involving multiple offenses and caused harm to vulnerable persons, namely criminal defendants appearing in his courtroom. BCGD Proc.Reg. 10(B)(1)(c), (d), and (h).

{¶ 58} In *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, as in this case, we found that the respondent had committed multiple violations of former Canons 1, 2, 3(B)(2), and 3(B)(4), and DR 1-102(A)(5), in addition to violations of former Canons 3, 3(B)(7), 3(C)(1), 3(E)(1), 4, 7(C)(1), 7(C)(2)(a), and DR 1-102(A)(4). Id. at ¶ 20, 28, 40, 41, and 44. We noted that the respondent had used "coercive tactics to expedite dispositions in criminal cases" as a means to manage her docket, engaged in improper ex parte communications, "violated her duties to remain impartial and avoid advocacy," "engaged in a pattern of misrepresentation in her interactions with judges, litigants, attorneys, and court personnel," engaged in "a pattern of rude, undignified, and unprofessional conduct that included abusive verbal outbursts, unjustified expulsions from the courtroom, and berating or humiliating

persons in the presence of others," and had "no appreciation of the gravity of her actions or their effect on the integrity and operation of both her courtroom" and the court of common pleas as a whole. Id. at ¶ 4, 11, 23, 30, and 36.

{¶ 59} Aggravating factors in *O'Neill* included "a selfish motive, a pattern of misconduct, multiple offenses, the submission of false statements in the disciplinary process, a refusal to acknowledge the wrongful nature of her conduct, and harm to vulnerable persons, e.g., criminal defendants and court personnel." Id. at ¶ 48. And, in mitigation, we noted the absence of a prior disciplinary record, and O'Neill's involvement in educating middle school and high school students about the legal system. Id. at ¶ 49. There, recognizing that the case was "extraordinary" and "unprecedented" in size and scope, we imposed a two-year suspension from the practice of law with one year stayed on conditions. Id. at ¶ 50, 55.

{¶ 60} In *Disciplinary Counsel v. Squire*, 116 Ohio St.3d 110, 2007-Ohio-5588, 876 N.E.2d 933, respondent committed single violations of Canons 1 and 2, 24 violations of Canon 3, and 13 violations of Canon 4 of the former Code of Judicial Conduct, as well as two violations of DR 1-102(A)(4) and ten violations of DR 1-102(A)(5) of the Code of Professional Responsibility. Id. at ¶ 94. Her multiple offenses included a " 'pattern of ignoring clear procedural and substantive requirements of the law necessarily to be followed by a judge for prompt, fair, and impartial decision of issues presented for her judicial decision; a pattern of intemperate, unjudicial conduct in proceedings brought before her; a pattern of failure to follow the law and of blaming other judges, lawyers and litigants for the consequences of her failures and actions; a pattern of rationalizing and revising the facts of past events to excuse her own conduct or to blame others by making baseless allegations of wrongful or malicious actions and motives of others; a pattern of judicial over-reaction and abuse of judicial power to hold or threaten to hold lawyers in contempt of court; a pattern of ex parte

communication with parties, counsel and witnesses and of improper judicial investigations; and a pattern of failure or refusal to recuse herself as judge in proceedings where her impartiality and bias was manifested.' " Id. at ¶ 81, quoting the panel report in that case.

{¶ 61} The board concluded and we agreed that " '[r]espondent's persistent pattern of legal errors and her inability to recognize them for what they are and accept responsibility for them demonstrates her continuing lack of judicial temperament and judgment.' " Id. at ¶ 106, quoting the panel report. We determined that "[r]espondent's intemperance and complete disrespect for litigants and attorneys who appeared before her, coupled with her total failure to take responsibility for her misconduct," mandated the imposition of a two-year suspension with one year stayed on the condition that the respondent commit no further disciplinary violations. Id. at ¶ 112.

{¶ 62} Here, although respondent violated many of the same provisions of the former Code of Judicial Conduct and the Code of Professional Responsibility, his violations were neither as numerous nor as egregious as those committed by O'Neill and Squire. Moreover, the combination of aggravating and mitigating factors present in this case, as well as respondent's acknowledgement of the wrongful nature of his conduct, warrants a sanction less severe than those imposed in *O'Neill* and *Squire*.

{¶ 63} Based upon the foregoing, we conclude that the sanction recommended by the parties and the board is reasonable and appropriate. Accordingly, Phil William Campbell is hereby suspended from the practice of law in the state of Ohio for one year, with six months of that suspension stayed on the condition that he commit no further violations during the 12-month period of sanction. If respondent fails to meet this condition, the stay will be lifted, and respondent will serve the entire one-year suspension. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

George D. Jonson and Kimberly Vanover Riley, for respondent.

_____