DISCIPLINARY COUNSEL *v.* ELUM.

[Cite as *Disciplinary Counsel v. Elum,* **133 Ohio St.3d 500, 2012-Ohio-4700.**]

*Judge misconduct—Violations of the Code of Judicial Conduct and the Rules of Professional Conduct—Substantial mitigation—Six-month stayed license suspension.*

(No. 2012-0277—Submitted April 4, 2012—Decided October 18, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-031.

_____

**Per Curiam**.

{¶ 1} Respondent, Judge Edward Joseph Elum of Massillon, Ohio, Attorney Registration No. 0010772, was admitted to the practice of law in Ohio in May 1977. Judge Elum has served as a Massillon Municipal Court judge since 1996.

{¶ 2} On April 11, 2011, relator, disciplinary counsel, charged Judge Elum in a two-count complaint with multiple violations of the Code of Judicial Conduct and the Rules of Professional Conduct. Judge Elum answered, and in August 2011, the parties submitted a consent-to-discipline agreement pursuant to Gov.Bar R. V(11)(A)(3)(c) and BCGD Proc.Reg. 11. A three-member panel of the Board of Commissioners on Grievances and Discipline rejected the agreement, including the jointly recommended sanction of a public reprimand.

{¶ 3} In September 2011, the three-member panel conducted a hearing, where Judge Elum testified and the parties submitted stipulated facts, exhibits, and violations of the Code of Judicial Conduct and the Rules of Professional Conduct, and a recommended sanction of public reprimand. The panel adopted the parties' stipulated facts, exhibits, and rule violations, but rejected the

stipulated sanction, recommending instead that Judge Elum receive a six-month suspension with the entire suspension stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. No objections have been filed.

{¶ 4} We accept the board's findings of fact and conclusions of law and agree that a six-month suspension, with the entire six months stayed, is an appropriate sanction.

### Misconduct

### Count One—The Dunn Case

{¶ 5} On January 11, 2010, Judge Elum found Cody Dunn, who was already on probation for domestic violence and underage alcohol consumption, guilty of a misdemeanor offense involving an underage person. Judge Elum suspended Dunn's 180-day jail sentence, provided that Dunn serve probation and comply with several conditions, including payment of all fines and costs by March 31, 2010. Dunn failed to timely pay the fines and costs, and on April 5, 2010, when Dunn appeared at the Massillon Municipal Court to meet with his probation officer, the probation department could have processed him for a probation violation and transferred him to jail.

{¶ 6} Judge Elum, however, "interceded" by asking the probation department to take Dunn into his courtroom. Judge Elum thereafter conducted what he describes as "probation review" with Dunn, during which he made the following remarks:

- Cody, quit screwing up. * * * Quit fucking up.
- You have a bad case of D.H. Dickheaditis.
- You're screwing off. You can't keep continuing to screw off or you'll be like the rest of the dickheads at the Stark County Jail.

2

**{¶ 7}** Neither Dunn's counsel nor counsel from the Massillon city prosecutor's office was present in Judge Elum's courtroom for this "probation review." Other members of the public, however, were there. Judge Elum then issued an entry indicating that Dunn had failed to comply with his probation terms and allowing Dunn more time to pay the outstanding fines and costs.

**{¶ 8}** The parties stipulated, the board found, and we agree that Judge Elum's conduct violated Jud.Cond.R. 1.2 (a judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety) and 2.8(B) (a judge shall be patient, dignified, and courteous to litigants) and Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**{¶ 9}** Disciplinary counsel also charged Judge Elum with a violation of Jud.Cond.R. 2.11(A) (a judge shall disqualify himself or herself from any proceeding in which the judge's impartiality might reasonably be questioned). The board recommends that we dismiss this charge for insufficient evidence. We adopt the board's findings and hereby dismiss the charge alleging a violation of Jud.Cond.R. 2.11(A) with respect to this count.

### Count Two—The Farnsworth Case

**{¶ 10}** On November 29, 2009, Nancy Farnsworth was charged with operating a vehicle while impaired, two drug-related offenses, and failure to control her vehicle. At some point after her arrest, the arresting officer from the Massillon Police Department reportedly sent Farnsworth 88 text messages, 15 nude and sexually explicit pictures, and one sexually explicit video. Farnsworth and her attorney reported the officer's conduct to the Massillon city prosecutor's office.

**{¶ 11}** On December 15, 2009, Judge Elum held a pretrial hearing on Farnsworth's criminal case. Laboratory tests showed Farnsworth's blood-alcohol

level to have been 0.00, and the prosecutor requested additional time to obtain results from other tests. Accordingly, Judge Elum scheduled a second pretrial hearing for January 15, 2010. Farnsworth's counsel also informed Judge Elum about the arresting officer's text and picture messages. At that time, Judge Elum had a "history of conflicts and/or disagreements" with the Massillon Police Department and, specifically, Police Chief Robert Williams. Judge Elum was alarmed at the arresting officer's alleged conduct and, for "religious and moral reasons," did not want his name associated with the case.

{¶ 12} At the January 15, 2010 pretrial hearing, the prosecutor again indicated that she was not prepared to move forward with the criminal charges against Farnsworth and she needed more time for investigation. Judge Elum was afraid that the public might perceive further delay as the court's being "unconcerned about the arresting officer's conduct." Judge Elum was also afraid that the police department's internal response might be to sweep the allegations against the arresting officer "under the rug and nothing would be done." Consequently, Judge Elum issued an order finding that the Massillon Police Department was "delaying the prosecution of this matter." Judge Elum's order further required the police department, the prosecutor, and defense counsel to "provide the Court, in a sealed envelope," all transcripts and copies of the arresting officer's text and picture messages so that Judge Elum could "review whether the prosecution has been compromised and wasted the court's time." The parties were to submit the materials to Judge Elum's bailiff by January 20, 2010. Neither party in Farnsworth's case requested Judge Elum's assistance in obtaining this material, and at the time of the January 15 order, Judge Elum was aware that the Massillon Police Department had already begun an internal investigation into the allegations against the arresting officer.

{¶ 13} On January 20, 2010, the prosecutor requested reconsideration of Judge Elum's January 15 order, arguing that the prosecution's case against

Farnsworth had not been compromised by the arresting officer's subsequent misconduct, that the text and picture messages were not exculpatory, and that Farnsworth had the power to subpoena the messages if they were relevant, which she had not done. The prosecutor further informed the court that the state of Ohio intended to dismiss the drug-related charges because Farnsworth's blood and urine tested negative. Finally, the prosecutor informed the court that defense counsel had "no objection to these charges being dismissed without the 'sealed envelope' being submitted for inspection."

{¶ 14} At the January 21, 2010 pretrial hearing, Judge Elum, after learning that the text and picture messages had not been delivered to his bailiff, recessed the court so that the parties could submit the "sealed envelope." Judge Elum also informed the parties that "proceedings in contempt" would be held later that day.

{¶ 15} When the court reconvened, the prosecutor informed Judge Elum that she had been unable to obtain all the text and picture messages. Judge Elum then singled out the "total neglect and disregard" of the Massillon Police Department for failing to comply with his January 15 order. Judge Elum specifically directed his comments to Chief Williams, who was present in the courtroom. Judge Elum then addressed Farnsworth and stated: "I just want to make sure that everybody understands that the administrative justice at this point was jeopardized * * *. I want the defendant to know and her family to know that the Court was not a party of, no[—]or did not participate in any cover up * * *." Judge Elum explained that he "wanted those records to be sealed" so that Farnsworth's family would "know that there's a second set somewhere in the event the investigation was not resolved to [her] satisfaction." Judge Elum apologized to Farnsworth "from [sic] behalf of the Court system" and declared, "[T]hat officer does not work for the Massillon Municipal Court[.] * * * [H]e is under direct control and supervision of Chief Williams * * *."

{¶ 16} Judge Elum then dismissed the drug-related charges against Farnsworth, but found her guilty of failure to control her vehicle, to which she had pled no contest. Though the case was resolved, Judge Elum indicated that he would proceed to enforce his January 15 order. The following day, the prosecutor filed a motion to vacate the order to enforce Judge Elum's January 15 order because the criminal and traffic charges against Farnsworth had already been resolved. Judge Elum vacated his January 15 order that same day.

{¶ 17} At some point in the following month, The Independent, a newspaper in Massillon, interviewed Judge Elum. In that interview, Judge Elum is quoted as follows:

> The chief doesn't like me and I understand that, OK? That's his prerogative. My position as a citizen taxpayer and as a judge, I've watched that department go down hill since he's been chief. He is ineffective. Period. That's it.

Judge Elum is also quoted as calling a specific police officer "lazy" and rarely prepared for court. Judge Elum further claims, according to the article, that he is a target of Chief Williams: "They are out to get me, but that's fine. That goes along with the territory here."

{¶ 18} Judge Elum has since acknowledged that there was no cover-up by the Massillon Police Department of the arresting officer's conduct in the Farnsworth case and that he used a "bad term" in describing the situation. Judge Elum has admitted that through his January 15 order, he placed himself in the middle of an administrative investigation into the arresting officer's conduct and stepped outside his role as a judge. Judge Elum has recognized that his threat of contempt proceedings at the January 20 pretrial hearing had been a "bad choice of words" because contempt would not have been appropriate under the

circumstances. And Judge Elum has agreed that he issued an unenforceable order on January 21 when he continued to pursue the submission of the text and picture messages after the criminal and traffic charges against Farnsworth had been resolved. Finally, Judge Elum admits making statements to the newspaper about the Massillon Police Department, alleging ineffective leadership.

{¶ 19} The parties stipulated, the board found, and we agree that Judge Elum's conduct with respect to Count Two violates Jud.Cond.R. 1.2, 2.2 (a judge shall uphold and apply the law and shall perform all duties of the judicial office fairly and impartially), 2.8(B), and 2.11(A) and Prof.Cond.R. 8.4(d).

**Sanction**

{¶ 20} In determining the appropriate sanction for Judge Elum's violations of the Code of Judicial Conduct and the Rules of Professional Conduct, we consider the duties violated, the injury caused, Judge Elum's mental state, the existence of aggravating and mitigating circumstances listed in BCGD Proc.Reg. 10(B), and precedent. *Disciplinary Counsel v. Campbell*, 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558, ¶ 53, citing *Disciplinary Counsel v. Sargeant*, 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 28, and *Disciplinary Counsel v. Evans*, 89 Ohio St.3d 497, 501, 733 N.E.2d 609 (2000).

{¶ 21} Judges are subject to the highest standards of ethical conduct. *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605, 923 N.E.2d 144, ¶ 13, citing *Mahoning Cty. Bar Assn. v. Franko*, 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958). Judge Elum has committed six violations of the Code of Judicial Conduct and two violations of the Rules of Professional Conduct. By using vulgar and intemperate language, Judge Elum behaved in an undignified, unprofessional, and discourteous manner towards litigants in his courtroom. He also needlessly injected himself into an administrative investigation, impairing the independence of the judiciary. Judge Elum allowed his history of conflicts with the Massillon Police Department to cloud his judgment, resulting in a failure to

fairly and impartially apply the law. Rather than promoting the evenhanded administration of justice, these actions have served to erode public confidence in the integrity of the judiciary.

{¶ 22} The parties presented no evidence regarding Judge Elum's mental state at the time of these disciplinary violations. Therefore, we " 'presume that he was healthy and unhindered in that regard.' " *Campbell*, 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558, ¶ 56, quoting *Disciplinary Counsel v. Sargeant*, 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 31.

{¶ 23} The board found that, as mitigating factors, Judge Elum (1) has not been the subject of previous discipline, (2) did not act with a dishonest motive, (3) has made a full and free disclosure to the board and displayed a cooperative attitude during the proceedings, and (4) has a good reputation in the community, demonstrating his commitment to the judicial system and the citizens he serves. BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e). Indeed, Judge Elum submitted many letters of reference attesting to his commitment to his community and his devotion to the law. Those submitting letters included the chief of police of Perry Township, the former chief executive officer of a drug-and-alcohol counseling agency, a director of Habitat for Humanity, the clerk of the Massillon Municipal Court, the Stark County sheriff, and other attorneys and judges. As an aggravating factor, the board noted that Judge Elum had engaged in a pattern of misconduct, as set forth in Count Two. BCGD Proc.Reg. 10(B)(1)(c).

{¶ 24} For precedent, the board considered several disciplinary cases involving judges. The sanctions ranged from public reprimands in *Ohio State Bar Assn. v. Goldie*, 119 Ohio St.3d 428, 2008-Ohio-4606, 894 N.E.2d 1226 (three violations of the Canons of the former Code of Judicial Conduct[1] for violating

---

1. The Canons of the Code of Judicial Conduct, 78 Ohio St.3d CLXIV, preceded the current Code of Judicial Conduct that took effect March 1, 2009.

litigants' due process rights), and *Disciplinary Counsel v. Runyan*, 108 Ohio St.3d 43, 2006-Ohio-80, 840 N.E.2d 623 (five violations of the Canons of the former Code of Judicial Conduct and one violation of the Disciplinary Rules[2] for attempting to take "corrective action" against a detective whose actions led the judge to declare a mistrial, ordering the prosecutor to post bond to cover costs of the retrial, and attempting to broker a "deal" with the prosecutor that went well beyond the judge's authority), to six-month fully stayed suspensions in *Disciplinary Counsel v. Hoague*, 88 Ohio St.3d 321, 725 N.E.2d 1108 (2000) (one violation of the Canons of the former Code of Judicial Conduct for writing a letter on court letterhead to individuals whom the judge observed driving recklessly, and having them appear in his courtroom) and *Disciplinary Counsel v. Gaul*, 127 Ohio St.3d 16, 2010-Ohio-4831, 936 N.E.2d 28 (three violations of the Canons of the former Code of Judicial Conduct and one violation of the Rules of Professional Conduct by making highly prejudicial and unnecessary remarks against a defendant and misusing the Amber Alert System to locate a witness and solicit media involvement).

{¶ 25} On the other hand, we imposed partially stayed suspensions in *Campbell*, 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558 (one-year suspension with six months stayed for 14 violations of the Canons of the former Code of Judicial Conduct and two violations of the Disciplinary Rules for misconduct involving improper investigation of a defendant, undignified language toward counsel, failure to appoint counsel for an indigent defendant, improper remarks from the bench about county commissioners, use of his position as a judge to obtain access to a prosecutor's file, and improperly placing a defendant in a holding cell) and *Disciplinary Counsel v. Ferreri*, 85 Ohio St.3d 649, 710 N.E.2d 1107 (1999) (18-month license suspension with 12 months stayed for

---

2. The Rules of Professional Conduct superseded the Code of Professional Responsibility after February 1, 2007.

multiple violations of the Canons of the former Code of Judicial Conduct and the Disciplinary Rules for making false statements to the media on three separate occasions. Judge Ferreri had said that the opinion of a court of appeals was "political" and had been written and made by a law clerk. He also claimed that a juvenile center's staff "routinely" beat inmates, that the administrative judge was engaged in a conspiracy to "cover up" the beatings, and that a juvenile judge and a court administrator were the "most entrenched and incompetent bureaucrats at the courthouse" and had lied to federal government officials).

{¶ 26} The board found, and we agree, that Judge Elum's misconduct does not rise to the level of Judge Ferreri's and was closer to Judge Campbell's. But Judge Elum's violations were neither as numerous nor as persistent as those committed by Judge Campbell. *Campbell* involved nine counts of misconduct compared to the two counts here, and therefore, a lesser sanction is justified. Moreover, the combination of aggravating and mitigating factors present in this case, as well as Judge Elum's acknowledgement of the wrongful nature of his conduct, warrants a less severe sanction than that imposed in *Campbell*. However, as in *Hoague*, in which the judge also received a six-month fully stayed suspension, Judge Elum's understandably strong feelings about the arresting officer's conduct in the Farnsworth case " 'do not excuse a judge from complying with the judicial canons and the Disciplinary Rules.' " *Hoague*, 88 Ohio St.3d at 324, 725 N.E.2d 1108, quoting *Ferreri*, 85 Ohio St.3d at 654, 710 N.E.2d 1107.

{¶ 27} Based upon the foregoing, we conclude that the sanction recommended by the board is reasonable and appropriate. Accordingly, Judge Edward Joseph Elum is hereby suspended from the practice of law in the state of Ohio for six months, with the entire six-month suspension stayed on the condition that he commit no misconduct during the suspension. If Judge Elum fails to meet this condition, the stay will be lifted and Judge Elum will serve the entire six-month suspension. Costs are taxed to Judge Elum.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

LUNDBERG STRATTON, J., concurs in judgment only.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Senior Assistant Disciplinary Counsel, for relator.

George D. Jonson and Linda L. Woeber, for respondent.

_____