DISCIPLINARY COUNSEL *v.* RUSSO, JUDGE.

[Cite as *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605.]

*Judges — Misconduct — Three violations of the Canons of the former Code of Judicial Conduct — Mitigation found — One-year license suspension, conditionally stayed.*

(No. 2008-2360 — Submitted December 2, 2009 — Decided February 25, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-049.

_____

**Per Curiam**.

{¶ 1} We must decide in this case the appropriate sanction for respondent, a judge who has been convicted twice on charges of disorderly conduct because of physical altercations with a girlfriend. Respondent admits that his behavior violated ethical standards incumbent on the Ohio judiciary. The Board of Commissioners on Grievances and Discipline has recommended a six-month suspension of his license to practice, with the suspension stayed in full on conditions, including two years of probation and the obligation to manage his alcohol dependency. We accept the admissions of judicial misconduct; however, to further ensure that respondent refrains from such conduct in the future, we order a one-year suspension of his license to practice, to be stayed on the recommended conditions.

{¶ 2} Respondent, Joseph Russo of Cleveland, Ohio, Attorney Registration No. 0037923, was admitted to the practice of law in Ohio in 1987 and has served as a judge in the Cuyahoga County Juvenile Court since 1998. In 2008, relator, Disciplinary Counsel, charged respondent with violations of the

Canons of the Code of Judicial Conduct that were then in effect:[1] Canon 1, requiring a judge to uphold the integrity and independence of the judiciary; Canon 2, requiring a judge to respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary; and Canon 4, requiring a judge to avoid impropriety and the appearance of impropriety in all the judge's activities.

{¶ 3} The board initially considered the case on a consent-to-discipline agreement, filed pursuant to the Rules and Regulations Governing Procedure on Complaints and Hearings of the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") 11. The parties stipulated in that agreement to the charged misconduct, referred to the alcohol abuse that contributed to cause the misconduct, and proposed a six-month suspension of respondent's license, all stayed. The board accepted the agreement and recommended the agreed-upon sanction.

{¶ 4} Upon review of the board's certified report, we rejected the recommendation and returned the cause to the board "for further proceedings, including consideration of a more severe sanction." *Disciplinary Counsel v. Russo*, 120 Ohio St.3d 1498, 2009-Ohio-381, 900 N.E.2d 617. A panel of the board then heard the case and, based on the parties' stipulations and evidence, again found violations of former Canons 1, 2, and 4. The panel also again recommended a stayed six-month suspension from practice, this time enumerating specific conditions for the stay—that respondent be placed on probation for two years, maintain his sobriety, comply with his Ohio Lawyers Assistance Program ("OLAP") recovery contract, and commit no further misconduct. The board adopted the panel's findings of misconduct and recommendation.

{¶ 5} The parties have not objected to the board's report

---

1. These Canons were superseded by a new Code of Judicial Conduct on March 1, 2009.

**Misconduct**

{¶ 6} Judicial misconduct must be shown by clear and convincing evidence. *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 708 N.E.2d 193, paragraph two of the syllabus. "Clear and convincing evidence" has been defined as " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " Id. at 331, 708 N.E.2d 193, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. The proof of respondent's improprieties meets this standard.

{¶ 7} In the early morning hours of September 6, 2006, respondent and his girlfriend became embroiled in an argument while driving home after dinner and drinks at a restaurant. When the argument escalated into a physical altercation, they stopped at a gas station, where the fight continued. Both were arrested and charged with "disorderly conduct—intoxicated," a minor misdemeanor. Later that month, respondent signed a waiver admitting his guilt and paid a $100 fine.

{¶ 8} In the early morning hours of July 4, 2007, another physical altercation ensued after an argument between respondent and his girlfriend, this time at the couple's condominium. A neighbor called police, but by the time police arrived, respondent had left the condominium to check into a nearby hotel.

{¶ 9} Police interviewed the girlfriend, who asked for a domestic-violence temporary protection order. Police also interviewed respondent, who initially denied the fight. When police told him of the domestic-violence charge, however, he claimed that his girlfriend had attacked him. The next day, the Rocky River Municipal Court granted a domestic-violence temporary protection order against respondent.

**{¶ 10}** In early March 2008, the domestic-violence charge was amended to "disorderly conduct—persistent," a misdemeanor of the fourth degree. Respondent pleaded no contest and was convicted. Later that month, respondent received a 30-day suspended jail sentence and was ordered to continue counseling for alcohol abuse and anger management. He was also placed on probation for one year and was fined $250.

**{¶ 11}** By engaging in the foregoing criminal activity, respondent failed to uphold the integrity of the judiciary, failed to comply with laws and promote public confidence in the judiciary, and failed to avoid impropriety and the appearance of impropriety. We therefore accept his admissions to having violated former Canons 1, 2, and 4.

### Sanction

**{¶ 12}** We decide disciplinary matters on a case-by-case basis. *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 52, 693 N.E.2d 1078. In determining the appropriate sanction to impose for respondent's violations of the Code of Judicial Conduct, we consider all relevant factors, including the duties he violated, the injury caused by his misconduct, and the sanctions imposed in similar cases. We then weigh the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B) to see whether extenuating circumstances warrant a more lenient or severe sanction. See *Disciplinary Counsel v. Kaup,* 102 Ohio St.3d 29, 2004-Ohio-1525, 806 N.E.2d 513, ¶ 11; *Disciplinary Counsel v. Evans* (2000), 89 Ohio St.3d 497, 501, 733 N.E.2d 609; *Disciplinary Counsel v. Medley* (2001)*,* 93 Ohio St.3d 474, 477, 756 N.E.2d 104.

**{¶ 13}** Judges are subject to the highest standards of ethical conduct. *Mahoning Cty. Bar Assn. v. Franko* (1958), 168 Ohio St. 17, 23, 5 O.O.2d 282, 151 N.E.2d 17. In violating the duties set forth in former Canons 1, 2, and 4, respondent diminished public confidence in the judiciary. As we observed in

*Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33:

{¶ 14} "An independent and honorable judiciary is indispensable to justice in our society. Canon 1 of the Code of Judicial Conduct. The primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution. *Kloepfer v. Comm. on Judicial Performance* (1989), 49 Cal.3d 826, 864-865, 264 Cal.Rptr. 100, 782 P.2d 239. Judicial misconduct undermines these goals and, in so doing, demeans the judicial system itself. See *In re Probert* (1981), 411 Mich. 210, 225, 308 N.W.2d 773."

{¶ 15} The board's recommended six-month suspension from practice, all conditionally stayed, is within the range of sanctions that we have ordered for judges who have committed misdemeanor offenses precipitated by substance abuse. As the board observed, at one end of the spectrum is a case in which we suspended a municipal court judge from practice for two years. *Disciplinary Counsel v. Ault,* 110 Ohio St.3d 207, 2006-Ohio-4247, 852 N.E.2d 727, ¶ 19. That judge had persuaded doctors to overprescribe painkilling medication for several years and had been convicted twice of attempting to obtain a dangerous drug by deception, a misdemeanor. Because of his commitment to sobriety and the fact that his abuses had not impaired his performance on the bench, we stayed his two-year suspension on the condition that he continue to receive treatment for his drug addiction. Id. at ¶ 22.

{¶ 16} As a midrange sanction, the board cited a case in which a common pleas judge received a six-month suspension because he had been convicted multiple times of driving a motor vehicle while under the influence of alcohol and had a prior disciplinary record. *Disciplinary Counsel v. Connor,* 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235. We also stayed that suspension and allowed the judge to remain on the bench because his two years of sobriety and

his uncompromised performance as a judge showed that he posed no risk to the public, provided that he complied with his treatment regimen. Id. at ¶ 20-21. As the least egregious example, the board referred to a case in which a Supreme Court justice was publicly reprimanded for a single conviction of driving a motor vehicle while under the influence of alcohol. *In Re Complaint Against Resnick,* 108 Ohio St.3d 160, 2005-Ohio-6800, 842 N.E.2d 31, ¶ 4.

{¶ 17} Here, respondent concedes that he suffers from alcohol dependency. He has satisfied the test in BCGD Proc.Reg. 10(B)(2)(g)(i) through (iv) for attributing mitigating effect to this condition. He has provided reliable proof that (1) he is alcohol dependent, (2) the dependency contributed to cause the misconduct, (3) he has been sober since the incident in July 2007 due to having successfully completed an approved treatment program, and (4) he is able to return to the ethical professional practice of law, providing he remains in recovery.

{¶ 18} The board, in adopting the panel's report, found:

{¶ 19} "Following the 2007 incident, Respondent voluntarily contacted Dr. Gintautas Sabataitis for an alcohol evaluation. Respondent has continued counseling with Dr. Sabataitis as required by his sentence in the 2007 criminal case."

{¶ 20} "Respondent has completed a two-year outpatient treatment program administered by Dr. Sabataitis."

{¶ 21} "At the recommendation of Dr. Sabataitis, Respondent is participating in the 12-step [Alcoholics Anonymous] recovery program."

{¶ 22} "Respondent asserts, and Dr. Sabataitis agrees, that his alcoholism did not interfere with his performance of his judicial duties except for occasionally making him tardy for his work."

{¶ 23} "Dr. Sabataitis recommends that Respondent must continue to refrain from the use of alcohol and to remain compliant with the AA protocols."

6

**{¶ 24}** "Paul A. Caimi, OLAP Associate Director, testified that Respondent has successfully completed a two-year OLAP contract. Respondent voluntarily renewed the contract on August 12, 2009, for an additional two year period. Respondent passed all random drug tests while he has been under contract with OLAP. Mr. Caimi has weekly contact with Respondent, and in Caimi's opinion, Respondent has a good attitude and is satisfactorily working his program."

**{¶ 25}** The board found that respondent is of good character and reputation in the greater Cleveland legal community and that the following considerations also weighed in his favor:

**{¶ 26}** "1. Respondent has no prior disciplinary record.

**{¶ 27}** "2. Respondent made a timely good faith effort to rectify the consequences of his misconduct.

**{¶ 28}** "3. Respondent made full and free disclosure to, and cooperated fully with the investigation by Disciplinary Counsel concerning his misconduct.

**{¶ 29}** "4. Respondent admitted his guilt and paid the fine assessed in the 2006 criminal case."

**{¶ 30}** The board found no aggravating factors.

**{¶ 31}** We accept the board's findings with respect to aggravation and mitigation; however, a sanction more rigorous than the board's recommendation is required for the harm caused by respondent's improprieties. We therefore order that respondent be suspended from the practice of law in Ohio for one year. The suspension is stayed, however, on the conditions that respondent complete a two-year probation in accordance with Gov.Bar R. V(9), fully comply with the terms of his current OLAP contract, completely refrain from the use of alcohol, and commit no further violations of either the Code of Judicial Conduct or the Rules of Professional Conduct. If respondent fails to comply with the conditions of this stay, the stay will be lifted, and he will be suspended from practice for one year.

{¶ 32} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Mary L. Cibella, for respondent.

_____