DISCIPLINARY COUNSEL v. WEITHMAN.

[Cite as *Disciplinary Counsel v. Weithman,*
143 Ohio St.3d 84, 2015-Ohio-482.]

(No. 2014–0544—Submitted June 11, 2014—Decided February 12, 2015.)

———————

**Per Curiam.**

{¶ 1} Respondent, Stephen Edwin Weithman of Delaware, Ohio, Attorney Registration No. 0027094, was admitted to the practice of law in Ohio in 1974. He served as a magistrate for more than 30 years, most recently in the Delaware County Court of Common Pleas Domestic Relations Division.

{¶ 2} In an April 8, 2013 complaint, relator, disciplinary counsel, alleged that while serving as a Delaware County magistrate, Weithman violated the former Code of Judicial Conduct, the Code of Professional Responsibility, and the Rules of Professional Conduct by engaging in abusive and disrespectful conduct directed toward a litigant and her lawyer at various times from 2006 to 2008. In December 2013, relator amended his complaint to add a count alleging that Weithman engaged in comparable violations of the current Code of Judicial Conduct and Rules of Professional Conduct while presiding over a second divorce matter in June and July 2013.[1]

{¶ 3} The parties filed stipulations of fact and misconduct and an agreed sanction of a one-year stayed suspension and also moved to waive an evidentiary hearing. The chairperson of the panel appointed to hear the matter denied the motion and a hearing took place on January 24, 2014. The parties submitted Weithman's testimony, their stipulations, 15 stipulated exhibits, and 11 letters attesting to Weithman's good character and reputation apart from the charged misconduct. The panel adopted the stipulated facts and most of the stipulated violations and recommended that Weithman be suspended for one year, all stayed on the conditions that he engage in no further misconduct and remain in compliance with the terms of his January 9, 2014 contract with the Ohio Lawyers Assistance Program ("OLAP"). The Board of Commissioners on Grievances and Discipline [2] adopted the panel's findings of fact and misconduct but recommends that Weithman be suspended from the practice of law for one year, with six months stayed on the conditions recommended by the panel. No one has objected to the board's findings or recommendation.

{¶ 4} We adopt the board's findings of fact and misconduct and also find that Weithman's conduct violated Canon 1 of the former Code of Judicial Conduct, as stipulated by the parties. But having considered his conduct, the aggravating and mitigating factors present, and the sanctions we have imposed for comparable violations, we find that a two-year suspension, all stayed on the conditions recommended by the board, will best protect the public from future misconduct.

---

1. Relator charged Weithman with misconduct for acts occurring before and after March 1, 2009, the effective date of the current Code of Judicial Conduct, 120 Ohio St.3d XCVIII, which supersedes the former Code of Judicial Conduct, 78 Ohio St.3d CLXIV (effective May 1, 1997), amended in part at 103 Ohio St.3d XCVII (effective October 1, 2004). Relator also charged him with misconduct under the applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility.

2. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

## Misconduct

### Count I—The Davis/Spriggs Matter

{¶ 5} The Davis/Spriggs matter involved a former wife's allegation that her former husband was in contempt of court for distributing nude pictures of her over the Internet in violation of their divorce decree. The litigation began in October 2005, involved multiple discovery disputes, and culminated in a five-day trial on the merits in February and March 2008. Weithman engaged in several isolated incidents of misconduct during the course of this bitterly contested litigation before issuing a written decision on March 10, 2008.

{¶ 6} The parties stipulated and the board found that during several status conferences and motion hearings, Weithman conducted himself in an unprofessional and undignified manner and treated the wife and her counsel with extreme disrespect. In the presence of counsel for both parties during a status conference, Weithman mockingly imitated the voice of the wife's attorney while leaving a voicemail message for the wife's forensic expert. Weithman stipulated that after that conference, he walked into the hallway where the parties were seated and "slowly ogled" the wife "from head to toe in a demeaning and degrading fashion." He later told the wife's counsel that she would need to provide him with a compact disc containing intimate photos of the husband's current girlfriend, which were also alleged to have been posted on the Internet. Weithman testified that the photos he requested were relevant to the proceeding, but he acknowledged that in asking for them, he "probably said some wise thing."

{¶ 7} Weithman acknowledged that his comments were inappropriate and admitted that he was "being a wise ass" and not thinking before he talked. He also acknowledged that his looking at the wife in a manner that she perceived to be degrading was "stupid" on his part.

{¶ 8} At a March 2007 hearing to address the husband's failure to provide discovery for the upcoming trial, Weithman lost his temper and stated:

> This is so goddamn simple. If you give the discovery and don't do all this bullshit, I don't have to sit here for hours and listen to this crap. So everybody's excused.
>
> Goddamn it. Comply with discovery and shut up once in a while. You make 17 hairline things, we'll do 8 of them but not these 9. Stupid. All Franklin County attorneys are stupid.

{¶ 9} While the wife's attorney was addressing Weithman at another pretrial conference, opposing counsel repeatedly threw paperclips at Weithman's head, striking him on the forehead on several occasions. Weithman did nothing to stop

this disruption. And just before the wife was to be cross-examined at the trial, Weithman jokingly told the husband's counsel that he would give him a dollar if he could make the wife cry on the stand and simultaneously removed a dollar bill from his wallet and placed it on the bench.

{¶ 10} After the trial concluded, Weithman issued a written decision in the husband's favor, finding that the wife had not established that her former husband had published the photographs after their divorce was final. The common pleas judge adopted the decision, it was affirmed on appeal, and it appears that the parties settled the matter before this court declined jurisdiction. Although Weithman believed that he acted impartially in a subjective sense, the board found that in the mind of a reasonable, objective observer, his words and deeds would create an appearance of bias against the wife and her attorney.

{¶ 11} Relator charged Weithman with multiple violations of the former Code of Judicial Conduct, including Canon 1 (requiring a judge to uphold the integrity and independence of the judiciary), 2 (requiring a judge to respect and comply with the law and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 3(B)(3) (requiring a judge to maintain order and decorum in court proceedings), and 3(B)(4) (requiring a judge to be patient, dignified, and courteous with litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity). Relator also charged him with violating DR 1–102(A)(5) of the Code of Professional Responsibility and Prof.Cond.R. 8.4(d) (both prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

{¶ 12} The parties stipulated that Weithman committed each of the charged violations, and the board found that his impatient, disrespectful, and discourteous treatment of the wife and her counsel, in contrast to his display of excessive familiarity toward the husband's counsel, supported findings that Weithman violated Canons 2, 3(B)(3), and 3(B)(4) of the former Code of Judicial Conduct as well as DR 1–102(A)(5) and Prof.Cond.R. 8.4(d). We adopt the board's findings of fact and misconduct. We also find that the conduct described above clearly and convincingly demonstrates that Weithman has failed to uphold the integrity and independence of the judiciary in violation of Canon 1 of the former Code of Judicial Conduct, as stipulated by the parties.

### Count II—The Krawczyk Matter

{¶ 13} The conduct at issue in Count II of relator's complaint arose in connection with the Krawczyk divorce proceedings. During a June 18, 2013 conference, the husband's counsel questioned whether a July 30, 2013 hearing set for the husband's Civ.R. 75 motion would allow sufficient time for Weithman to render a decision regarding custody of the minor children before the start of the new school year. Weithman responded angrily, using vulgar and intemperate

language to berate the husband's counsel and reiterating that the Civ.R. 75 hearing would occur on July 30 and that the trial would occur in September.

{¶ 14} On July 30, 2013, the parties and their attorneys commenced settlement negotiations while at the courthouse. Weithman conducted other business; he later testified that it was a particularly busy and stressful day for him. When the husband's counsel advised Weithman that the parties could not reach an agreement on child-support issues for the interim period, Weithman stated, "Let's just start the hearing." He then began to yell.

> I don't know what it is with the Franklin County Attorneys, these Franklin County Attorneys, but they all have to have these Rule 75 hearings in every case, Rule 75 hearings all the time. I'll give you your Rule 75 hearing but you won't get a decision on this until the divorce is tried and I'll continue this divorce for two more years.

{¶ 15} As Weithman left the courtroom, he shouted, "He [the husband] makes $150,000 per year, and he's trying to get out of paying six weeks of support!" Later that day, he made additional disparaging remarks about the husband and berated the husband's counsel in a profanity-laced tirade for filing a Civ.R. 75 motion just six weeks before trial. He eventually apologized to the parties for his shouting, acknowledging that it was "poor form" and that he had displayed "bad sportsmanship." The board found that there was no rational legal basis for Weithman to threaten to continue the divorce case for two years or to angrily prejudge the merits of the husband's Civ.R. 75 motion.

{¶ 16} Weithman did not recuse himself from the Krawczyk case, despite having yelled at the husband's counsel using abusive and vulgar language and having angrily expressed an opinion regarding the merits of what he erroneously believed to be the merits of the husband's Civ.R. 75 motion before the hearing. Challenging Weithman's impartiality, the husband's counsel moved to remove him not only from the Krawczyk case but from all cases in which he or his firm was involved. In support of the motion, the attorney submitted his own affidavit detailing Weithman's inappropriate conduct in the Krawczyk matter and in several other cases. Weithman was promptly removed from the Krawczyk matter and one other case involving the husband's counsel.

{¶ 17} In his complaint, relator alleged that Weithman's conduct in the Krawczyk matter violated Canon 1 of the current Code of Judicial Conduct (requiring a judge to respect and comply with the law, to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, and to avoid impropriety and the appearance of impropriety), Jud. Cond.R. 1.2 (requiring a judge to respect and comply with the law and to act at

all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), 2.2 (requiring a judge to uphold and apply the law and to perform all duties of the judicial office fairly and impartially), 2.8(B) (requiring a judge to be patient, dignified, and courteous with litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity), and 2.11 (requiring a judge to disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned), and Prof.Cond.R. 8.4(d). The parties stipulated that Weithman's conduct violated each of those rules. The board, however, declined to find that Weithman violated Canon 1 of the Code of Judicial Conduct, noting that Paragraph Two of the Scope of the Code provides that the canons state overarching principles of judicial ethics that all judges must observe, but that judges may be disciplined only for violating a specific rule.

{¶ 18} After finding that Weithman's angry and vulgar outbursts directed toward the husband's counsel, his disparaging remarks about the husband, and his apparent prejudgment of the merits of the husband's Civ.R. 75 motion created an appearance of bias against the husband, the board found that Weithman violated Jud.Cond.R. 1.2 and 2.11. The board also found that his threat to delay the Krawczyk divorce out of spite for the husband's filing of a Civ.R. 75 motion and his apparent bias against the husband and his counsel impaired his impartiality, in violation of Jud.Cond.R. 2.2, that his angry outbursts were undignified and discourteous, in violation of Jud.Cond.R. 2.8(B), and that his conduct was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d). We adopt the board's findings of fact and misconduct with respect to Count II of relator's complaint, and we dismiss the alleged violation of Canon 1 of the current Code of Judicial Conduct.

## Sanction

{¶ 19} In determining the appropriate sanction for Weithman's violations of the former Code of Judicial Conduct, the Disciplinary Rules of the Code of Professional Conduct, and the Rules of Professional Conduct, we consider the duties violated, the injury caused, Weithman's mental state, the existence of aggravating and mitigating circumstances listed in BCGD Proc.Reg. 10(B),[3] and precedent. *Disciplinary Counsel v. Campbell,* 126 Ohio St.3d 150, 2010-Ohio-3265, 931 N.E.2d 558, ¶ 53, citing *Disciplinary Counsel v. Sargeant,* 118 Ohio St.3d 322, 2008-Ohio-2330, 889 N.E.2d 96, ¶ 28, and *Disciplinary Counsel v. Evans,* 89 Ohio St.3d 497, 501, 733 N.E.2d 609 (2000).

---

3. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

{¶ 20} The parties have stipulated and the board has found that a single aggravating factor is present—Weithman committed multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(d).

{¶ 21} As mitigating factors, the parties have stipulated, and the board has agreed, that Weithman has had no previous discipline, that he did not act with a dishonest or selfish motive, that he has demonstrated his good character and reputation apart from the charged misconduct, and that he has provided full and free disclosure to the board and demonstrated a cooperative attitude toward these disciplinary proceedings. *See* BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e). The board also credited Weithman for his expression of remorse, his current recognition of the importance of impartiality, and his clear understanding of the deleterious effect that his conduct has had on the judicial process.

{¶ 22} Weithman did not seek to establish that he had been diagnosed with a mental disability that contributed to his misconduct as a mitigating factor pursuant to BCGD Proc.Reg. 10(B)(2)(g). The board found, however, that he has been diagnosed with "probable Cyclothymic Disorder"[4] and credited him for his commitment to a course of psychological and psychiatric treatment designed to control his anger, stress, and anxieties, as well as his decision to enter into a four-year OLAP contract. His treating psychologist reports that Weithman has been forthcoming, has uncovered major triggers for his anger, and has worked hard to interrupt the pattern and correct the ways in which he shows his anger. His psychiatrist reports that his anxiety has abated significantly and he is feeling much less stressed. Both professionals believe that his prognosis is good with continued treatment.

{¶ 23} The parties have jointly recommended, and the panel has agreed, that Weithman should be suspended for one year, all stayed on the conditions that he remain in compliance with his OLAP contract and commit no further misconduct. In support of their recommendation, they note that we imposed a one-year suspension, fully stayed on the conditions that the respondent submit to both a mental-health evaluation conducted by OLAP and a period of monitored probation in accordance with Gov.Bar R. V(9), for comparable conduct in *Disciplinary Counsel v. McCormack*, 133 Ohio St.3d 192, 2012-Ohio-4309, 977 N.E.2d 598.

{¶ 24} The board has adopted the panel's findings of facts and conclusions of law. It expressed concern, however, that Weithman had engaged in a pattern of misconduct in which he exhibited a demeaning attitude toward counsel and litigants in two matters before him and made disparaging remarks regarding the

---

4. The board took judicial notice of the Mayo Clinic website, which describes cyclothymia or cyclothymic disorder as a mood disorder that causes emotional ups and downs that are not as extreme as those of bipolar disorder. *See* http://www.mayoclinic.org/diseases–conditions/ cyclothymia/basics/definition/con–20028763 (accessed Jan. 20, 2015).

intellect and trial tactics of counsel based on the county in which they often practiced, all of which are "contrary to the core principles of demeanor, integrity, impartiality, and fairness" and "wholly inappropriate for a judicial officer." Moreover, the board found that his conduct toward Ms. Spriggs and her counsel went beyond a lack of courtesy and decorum and reflected "an element of sexual harassment that is antithetical to promoting public confidence in a fair and impartial judiciary." Therefore, the board recommended that we suspend Weithman for one year, with the final six months stayed on the conditions recommended by the panel.

{¶ 25} We find our decision in *McCormack* to be instructive. Like Weithman, McCormack was a domestic-relations-court magistrate who engaged in impatient, intemperate, and irrational behavior, violating many of the same canons and rules that we have found Weithman to have violated. *McCormack* at ¶ 1–15. The panel and board, however, distinguished McCormack's conduct, finding that it was limited to a single postdecree case, while finding that Weithman engaged in misconduct in two separate cases that were tried over a period of five to seven years. Nonetheless, the panel and board found that McCormack's misconduct was more egregious than Weithman's because McCormack's impatient, undignified, and discourteous conduct deprived the parties of a meaningful opportunity to present testimony and evidence on the issues at hand, required them to appear at multiple hearings and to devote additional time and resources to the litigation, and ultimately caused the common pleas judge assigned to the case to declare a mistrial. *McCormack* at ¶ 6–13. In contrast, the panel found that Weithman's conduct "did not cause quantifiable damage to the litigants."

{¶ 26} We acknowledge that the harm Weithman has caused is not quantifiable in dollars and cents, but we find that he has caused considerable harm, not only to the attorneys and litigants who witnessed his conduct, but to the judiciary as a whole. Because the judiciary plays a central role in preserving the principles of justice and the rule of law, we hold judges and those authorized to perform judicial functions within a court to the highest standards of ethical conduct. *Disciplinary Counsel v. Elum*, 133 Ohio St.3d 500, 2012-Ohio-4700, 979 N.E.2d 289, ¶ 21, citing *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605, 923 N.E.2d 144, ¶ 13, and *Mahoning Cty. Bar Assn. v. Franko*, 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958); Preamble and Application, Section I(B), Code of Judicial Conduct.

{¶ 27} It may be true that Weithman's misconduct did not cause lengthy delays, multiple hearings, or a mistrial. However, counsel for one of the affected litigants averred that as a result of Weithman's comments, demeanor, and threats to delay the final decree of divorce, his client elected to abandon his pending Civ.R. 75 motion—intended to resolve custody, support, and school-placement

issues for the parties' minor children before the first day of a school year—and accept his wife's last offer for parenting time.

{¶ 28} Weithman's ogling of a female litigant who sought redress for her former husband's alleged posting of her intimate photographs on multiple pornographic websites and his subsequent offer of a bounty to opposing counsel if he could make her cry during cross-examination—going so far as to remove a dollar bill from his wallet and place it on the bench—were also demeaning and degrading to that litigant and to all women. Although his comments may have been an ill-conceived attempt to inject humor and levity into an otherwise tense proceeding, Weithman testified that he could see the hurt in the witness's eyes as she was harassed by the very person charged with impartially deciding the merits of her extremely personal litigation.

{¶ 29} Weithman's quick temper, his impatient, disrespectful, and profanity-laced rants directed toward the litigants and counsel who appeared in his courtroom, and his failure to curb displays of disrespect and excessive familiarity exhibited by counsel who had long practiced in his courtroom have also compromised public trust and confidence in the independence, impartiality, and integrity of the judiciary.

{¶ 30} Weithman has demonstrated his commitment to his treatment plan and has begun to develop positive outlets and coping strategies to deal with the stress attendant to his work, has committed to a four-year OLAP contract, and has submitted letters from 11 attorneys attesting to his good character, reputation, and work ethic apart from the charged misconduct. For these reasons, we believe that a conditionally stayed suspension, as recommended by the panel—albeit for a longer term than that recommended by either the panel or the board—will best protect the public from future misconduct at Weithman's hand.

{¶ 31} Accordingly, Stephen Edwin Weithman is suspended from the practice of law in Ohio for two years, all stayed on the condition that he commit no further misconduct and remain in full compliance with his January 9, 2014 OLAP contract. If Weithman fails to comply with these conditions, the stay will be revoked and he will serve the full two-year suspension. Costs are taxed to Weithman.

Judgment accordingly.

O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER, J., dissent and would suspend respondent for one year with six months stayed.

PFEIFER, J., not participating.

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Donald M. Scheetz, Assistant Disciplinary Counsel, for relator.

Bradley N. Frick, for respondent.